AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court

### for the
### Western District of New York

FILED
MAY 26 2021
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY
UNITED STATES DISTRICT COURT

**United States of America**

v.

**VANESSA RONDEAU**

Case No. 21-mj- 5127

_____
*Defendant*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

From on or about January 13, 2020, to on or about February 11, 2021, in the Western District of New York and elsewhere, the defendant, VANESSA RONDEAU:

(1) did knowingly import, transport, and sell wildlife with a market value in excess of $359, that is, polar bear skulls, by engaging in conduct that involved the sale and purchase of, the offer of sale and purchase of, and the intent to sell and purchase, said wildlife, knowing that said wildlife was possessed, transported, and sold in violation of, and in a manner unlawful under, the laws and regulations of the United States, specifically, the Endangered Species Act, Title 16, United States Code, Sections 1538 and 1540(b)(1);

(2) did knowingly make and submit, and cause to be made and submitted, a false record, account, label, and false identification for wildlife, to wit, a polar bear skull, which were intended to be, and had been, imported, transported, and sold from a foreign country, in that the defendant, falsely labeled, and caused to be falsely labeled, a Canada Post package with a label of "1 Cadre" under the Itemized List of Contents section of the label, and a declared value of $100; and

(3) did fraudulently and knowingly import and bring into the United States merchandise, that is, a polar bear skulls, contrary to law, in that the defendant imported and brought into the United States said merchandise without having obtained an ESA permit, in violation of the Endangered Species Act, Title 16, United States Code, Section 1538(a)(1)(A);

all in violation of Title 16, United States Code, Sections 3372(a)(1), 3372(d)(2), 3373(d)(1)(B), and 3373(d)(3)(A)(ii); and Title 18, United States Code, Section 545.

This Criminal Complaint is based on these facts:

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Ryan Bessey, Special Agent, U.S. Fish and Wildlife Service
*Printed name and title*

Sworn to before me and signed telephonically.

Date: May 26, 2021

_____
*Judge's signature*

City and State:  Buffalo, New York

HON. MICHAEL J. ROEMER, USMJ
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Ryan Bessey, being first duly sworn, hereby depose and state as follows:

### I.   INTRODUCTION

1.      I am a Special Agent employed by the United States Fish and Wildlife Service ("USFWS"), Office of Law Enforcement, in Amherst, New York.  I have been employed by the USFWS as a Special Agent for over 10 years.  Prior to my employment as a Special Agent with the USFWS, I served as a Wildlife Inspector for the USFWS for approximately 4 years. I have received specialized training and possess experience in the enforcement of federal laws, including the Endangered Species Act ("ESA"), 16 U.S.C. § 1531, *et seq.*, the Lacey Act, 16 U.S.C. § 3371, *et seq.,* and other related statutes such as smuggling statutes under Title 18 of the United States Code.  My duties also include the enforcement of regulations of the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES"), an international treaty to which the United States is a signatory.  I have participated in numerous federal investigations, either as a case agent or in various support roles, including investigations involving the unlawful purchase, smuggling, transport, possession, and sale of wildlife.  I have participated in the service of arrest and search warrants, including search warrants involving social media platforms such as Facebook.com.

2.      This affidavit is made in support of an application for a criminal complaint charging **VANESSA RONDEAU** ("**RONDEAU**") with Lacey Act Trafficking, Lacey Act False Labeling, and Smuggling, in violation of Title 16, United States Code, Sections

3372(a)(1), 3372(d)(2), 3373(d)(1)(B), and 3373(d)(3)(A)(ii); and Title 18, United States Code, Section 545.

3.      I am fully familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, and my review of reports, documents, and other items of evidence.  Because this Complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation.  Where statements of others are related herein, they are related in substance and part.  Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

## II.      THE RELEVANT STATUTES

4.      Based on my training, experience and research, I know the following about wildlife to include polar bear, migratory birds, Hartmann's mountain zebra and the federal laws and regulations protecting them.

5.      Under the ESA and regulations promulgated thereof, except as otherwise provided, all wildlife must be declared to the USFWS upon import into the United States and prior to the export from the United States.  Furthermore, a USFWS officer must clear all wildlife imported prior to release from detention by Customs officers and all wildlife to be exported from the United States prior to the physical loading of the merchandise on a vehicle or aircraft, or the containerization of such wildlife.  *See* 50 C.F.R. Parts 14.52, 14.61 and 14.63. Under the ESA, "commercial activity" is defined as all activities of industry and trade,

3

including, but not limited to, the buying and selling of commodities and activities conducted for the purpose of facilitating such buying and selling.  *See* 16 U.S.C. § 1532(2).

6.      The ESA makes it unlawful for any person subject to the jurisdiction of the United States to engage in any trade in any specimens contrary to CITES.  *See* 16 U.S.C. § 1538(c)(1).  CITES is a treaty providing protection to fish, wildlife, and plants that may become imperiled due to the demands of international markets.  CITES has been signed by over 180 countries around the world.  CITES is implemented under the authority of the ESA and the regulations promulgated thereunder.  *See* 16 U.S.C. § 1538(c); 50 C.F.R. Parts 14 and 23.  Species protected under CITES are listed in a series of appendices (Appendices I, II, and III).  Trade in polar bears (*Ursus maritimus*) and Hartmann's mountain zebra (*Equus zebra hartmannae*) are regulated under CITES.  Both these species are listed as Appendix II, which includes species that are not necessarily now threatened with extinction but that may become so unless trade is closely controlled.  Appendix II animal species listed under CITES may be imported to the United States from a foreign country only if, prior to importation, the importer possesses a valid export permit or re-export certificate issued by the country of export.  Some species are listed in Appendix I, which include species that are threatened with extinction and as such, CITES prohibits any commercial trade of these species.

7.      The ESA was enacted to provide a program for the conservation of endangered and threatened species.  Pursuant to 16 U.S.C. § 1538(a)(1)(A), it is unlawful for any person subject to the jurisdiction of the United States to import any endangered species into the United States.  Under the ESA, the term "endangered species" includes any species, or part

4

thereof, included on the "List of Endangered or Threatened Wildlife," found in 50 Code of Federal Regulations Part 17.11. Furthermore, pursuant to 16 U.S.C. § 1538(a)(E), it is unlawful to deliver, receive, carry, transport, or ship in interstate or foreign commerce, by any means whatsoever and in the course of a commercial activity, any such species.

8.      Polar bear and Hartmann's mountain zebra are listed as "threatened" under 50 C.F.R. 17.11 and have been so listed since 2008 and 1979, respectively.

9.      Under the Migratory Bird Treaty Act ("MBTA"), 16.U.S.C. § 703(a), its unlawful to "...possess, offer for sale, sell, offer to barter, barter, offer to purchase, purchase, deliver for shipment, ship, export, import, cause to be shipped, or imported, deliver for transportation, transport or cause to be transported...any migratory bird, any part, nest, or egg of any such bird, or any product, whether or not manufactured, which consists, or is composed in whole or part, of any such bird or any part, nest or egg thereof."

10.     Pursuant to the Marine Mammal Protection Act ("MMPA"), 16 U.S.C. § 1371(a), a moratorium on the taking and importing of marine mammals and marine mammal products was enacted, prohibiting the importation of marine mammal or marine mammal products into the United States.

11.     The MMPA defines polar bear as a marine mammal under 16 U.S.C. § 1362(6).

12.     Pursuant to 16 U.S.C. § 3372(a)(1), the Lacey Act makes it unlawful for a person to import, export, transport, sell, receive, acquire, or purchase any fish or wildlife, taken, possessed, transported, or sold in violation of any United States law or treaty of the United States.  In addition, 16 U.S.C. § 3372(d)(1) makes it unlawful for any person to make or submit any false record, account, or label for, or any false identification of, any fish, wildlife, or plant which has been, or is intended to be imported, exported, transported, sold, purchased, or received from any foreign country.

13.     Pursuant to 18 U.S.C. § 545, it is unlawful to fraudulently or knowingly import or bring into the United States, any merchandise contrary to law, or receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law.

III.    **INVESTIGATION AND FACTUAL BASIS**

A.      **Background about The Old Cavern Boutique**

14.     An international oddities and curiosities market exists in which unique and often rare items are sought by collectors. Such items can include early medical instruments, crystals, preserved natural history items, taxidermy items, and skeletons. In this market, wildlife parts, and products thereof, are popular items and frequently bought and sold. In particular, skulls, both human and animal, are in high demand to oddities collectors. Typically, the rarer the species, the more valuable and sought after a skull becomes.

15.     Vanessa Rondeau ("RONDEAU") is a Canadian citizen, residing in Montreal, Quebec, Canada. RONDEAU owns and operates a business called The Old Cavern Boutique ("THE OLD CAVERN BOUTIQUE"), located at 1654 Avenue Mont-Royal East, Montreal, Quebec, Canada H2J1Z5.

16.     THE OLD CAVERN BOUTIQUE offers for sale a variety of unique curiosity and oddity items, many composed in whole or in part from wildlife. According to THE OLD CAVERN BOUTIQUE Facebook page, RONDEAU "specialise [SIC] in online sales of Antiquities, vintage objects, and taxidermy." RONDEAU offers inventory for sale at her storefront by appointment and through Facebook.

17.     Review of THE OLD CAVERN BOUTIQUE's Facebook page revealed numerous wildlife items for sale, many of which are protected under Federal laws, including the ESA, CITES, MMPA, and the MBTA.

18.     U.S. Customs and Border Protection import/export records show that, from approximately November 27, 2018 through September 16, 2019, RONDEAU sent approximately 30 mail parcels into the United States. Contents of these parcels were declared in a variety of ways, such as "cadre," "art decoration," "big toy," "collectable," "art statue," and "tapis." The parcels ranged in weight from 0.3 kilograms to 38.18 kilograms and were sent to various individuals in the United States via Canada Post international mail.

19.     I know through training and experience that wildlife traffickers do not specifically identify the true contents in a package. Instead, they will falsely label packages containing illegal wildlife as unassuming objects in order to avoid detection from law enforcement. I have specifically been involved in other investigations where packages containing smuggled wildlife were labeled as statues, toys, or ornaments.

20.     United States border crossing records show that RONDEAU entered the United States 18 times via vehicle, between December 27, 2018 and September 7, 2019. All but one entry was at the Champlain, NY Port of Entry ("POE"). Twelve of RONDEAU's entries took place between midnight and 2:00 a.m. Two of RONDEAU's visits to the United States show relatively short stays in the United States:

   a.  On July 26, 2019, RONDEAU entered the United States via vehicle at the Champlain, NY POE at approximately 7:18 p.m. and returned to Canada early the next day, at approximately 2:02 a.m.

   b.  On September 7, 2019, RONDEAU entered the United States via vehicle at the Champlain, NY POE at approximately 12:41 a.m. and returned to Canada approximately one hour later at 1:46 a.m.

21.     I know through training and experience that in an effort to avoid detection from customs authorities, wildlife traffickers have been known to use third party shipping companies and other post office boxes located near international borders in order to receive illegal wildlife, which is then smuggled across the border via vehicle. Short trips into the

United States, at late hours, such as those by RONDEAU on July 26 and September 7, 2019 meet border-crossing characteristics seen used by other wildlife traffickers.

22.     On August 28, 2019, United States Customs and Border Protection intercepted a Canada Post mail package (#LM004903332CA) that entered the United States at the Champlain, New York POE. The package sender was listed as "Vanessa Rondeau" at 1654-1 Mont-Royal East, Montreal, Qc H2J1Z5. The package was addressed to an individual in Memphis, Tennessee. The box on the label marked "Gift" was checked. Inspection of the package revealed an American crow (*Covus brachyrhynchos*) skull affixed to a picture frame. The handwritten package label, signed by RONDEAU, declared the contents as "cadre," which is the French word for "frame." A USFWS Wildlife Inspector seized the package and its contents.

23.     On August 29, 2019, RONDEAU advertised a taxidermy mounted crow for sale through Facebook for $325. The advertisement included a photograph and instructions to "pm [private message] if interested." A copy of the advertisement is included below:



24.     On September 26, 2019, USFWS sent a Notice of Seizure and Proposed Forfeiture letter to RONDEAU via registered mail. The letter was confirmed received with a signature that appears to be "Vanessa Rondeau" on a U.S. Postal Service Return Receipt for International Mail (Form CN07). The letter officially informed RONDEAU of the crow skull seizure and described the federal laws and regulations that were violated when the crow skull was imported into the United States in the manner it was. Namely, no wildlife import declaration was made in violation of 16 U.S.C. § 1538(e); 50 C.F.R. 14.61, the wildlife was imported at a place other than a designated wildlife port in violation of 16 U.S.C. § 1538(f);

50 C.F.R. 14.11, failure to allow for inspection of wildlife in violation of 16 U.S.C. § 1540(e)(4)(A); 50 C.F.R. 14.51; import wildlife in a container not marked as required in violation of 16 U.S.C. § 3372(b); 50 C.F.R. 14.81, and import of migratory bird parts with a permit in violation of 16 U.S.C. § 703; 50 C.F.R. 21.11.

25.     On September 20, 2019, I contacted RONDEAU in a covert capacity via Facebook by sending a Facebook private message and inquired about the crow mount that had been offered for sale on August 29, 2019. I told RONDEAU that I resided in the United States and asked about the cost to have the crow mount shipped. RONDEAU indicated the shipping would cost $50 Canadian dollars ("CAD"). I inquired if RONDEAU had any problems shipping "these things" to the United States because it might be a "protected species." RONDEAU replied that she has never had a problem and explained, "I label them as Art piece."

26.     On November 19, 2019, RONDEAU posted to Facebook, advertising a holiday sale. In the post, RONDEAU stated that she planned to travel to Florida the first week of December and offered to bring customer's items down with her.

27.     On December 3, 2019, and again on December 28, 2019, using the Facebook, RONDEAU offered a polar bear skull for sale. The post made on Facebook included photographs of the skull and listed an asking price of $750 dollars (in the first posting) and $799 (in the second posting). The post instructed interested buyers to "pm [private message] if interested." A copy of the advertisement is included below:



**The old cavern boutique**
December 28, 2019 · 🌐

Large polar bear avalaible for 799$ pm if interested payment plan available #skull #bones #tattoo #taxidemy

👍❤️😮 22

👍 Like          💬 Comment          ↗ Share

**B.      Undercover Purchase of Polar Bear Skulls from RONDEAU**

28.      On January 13, 2020, in a covert capacity, I again contacted RONDEAU via a private message on Facebook and requested photos of any available polar bear skulls. RONDEAU replied and sent a photograph of a polar bear skull with a comment that it was her "Last one." RONDEAU inquired about my location and so I informed her that I lived near Buffalo, NY. RONDEAU offered to sell the polar bear skull for $750, plus $30 for

shipping. After requesting and receiving additional photographs, I agreed to buy the polar bear skull.

29.    On January 13, 2020, as instructed by RONDEAU, I sent a total of $780 United States dollars ("USD") via PayPal for the purchase and shipment of the polar bear skull. PayPal records later showed the account belonged to Ryan COSLETT ("COSLETT"), an associate of RONDEAU who lives in Florida.

30.    On January 13, 2020, I continued to communicate with RONDEAU in a covert capacity using the Facebook private message feature and provided RONDEAU with a covert shipping address in Buffalo, NY. RONDEAU said the polar bear skull would be sent via United Parcel Service (UPS) from Plattsburgh, New York. RONDEAU stated she could ship it from Canada the next day but cautioned she was "not responsible about the custom. [SIC]" I asked if RONDEAU had any trouble with Customs. RONDEAU simply replied, "It's a polar bear skull…." RONDEAU went on to explain that polar bear skulls are not protected in Canada but are protected in the United States. RONDEAU said she did not mind bringing it with her [into United States] but was not shipping it across [the border]. I asked RONDEAU to pack the skull well so that it does not break during shipment. RONDEAU stated, "Don't worry that's my job I do that everyday [smiley face emoji]."

31.    On January 24, 2020, agents with USFWS and U.S. Department of Homeland Security Investigations (HSI) initiated surveillance at the Champlain, New York POE. At approximately 7:26 p.m. RONDEAU entered the United States via vehicle at the Champlain,

New York POE.  The surveillance team followed RONDEAU's vehicle directly to a third-party shipping warehouse,[1] located near the Canadian border. Surveillance team members witnessed RONDEAU enter the warehouse carrying two boxes.

32.    On January 25, 2020, RONDEAU sent me a Facebook private message, which contained two photographs showing two boxes, stacked in what appeared to be a shipping warehouse. RONDEAU explained that the polar bear skull was in the box on the top. RONDEAU advised that once the box was shipped, she would send the tracking number. The two boxes in the picture matched the description of the boxes that agents saw RONDEAU carrying into the third-party shipping warehouse shortly after she entered the United States on January 24, 2020.

33.    On January 25, 2020, RONDEAU offered another polar bear skull for sale in an advertisement posted to Facebook The asking price was $700.

34.    On January 27, 2020, RONDEAU sent me another private message via Facebook, which included a photograph of a partial shipping document showing UPS tracking #1Z1260790375710360. A portion of RONDEAU's first name and her full last name was visible on the document.

_____

[1] The shipping warehouse offers many cross-border third party logistic services, including post office boxes, freight forwarding, and storage.

35.     On February 2, 2020, I received a package, in Amherst, New York, from RONDEAU via UPS (Tracking #1Z1260790375710360) containing one polar bear skull. The box, which matched one of the boxes RONDEAU dropped off at the third party shipping warehouse during the surveillance, was labeled with a hand written return address that read, "Vanessa R, 6660 NW 25th St, Sunrise, FL 33313." Open source records show that 6660 NW 25th St, Sunrise, FL 33313 is COSLETT's residence.

36.     I know through training and experience that wildlife traffickers will attempt to avoid law enforcement detection by using, false, fictitious, or incomplete return address information when shipping illegal wildlife.

37.     I know through training and experience that wildlife traffickers, in an effort to avoid detection by law enforcement, will often label or mark shipping records as a gift, when in fact the package is commercial in nature. This is done because there is a belief among smugglers that law enforcement scrutinize packages that are commercial in nature more than packages sent for personal reasons.

38.     On January 24, 2021, an advertisement was posted to THE OLD CAVERN BOUTIQUE Facebook page, offering for sale a polar bear skull. The asking price was listed at $699. The description provided was "[Star emoji]Rare[Star emoji] we got a new polar bear skull in (non cites for Europe sorry)."

39.   On January 26, 2021, in a covert capacity, I contacted RONDEAU via a Facebook private message and expressed interest in buying the polar bear skull. RONDEAU agreed on the price of $685 CAD [$534.85 USD] for the skull, which included a $35 shipping fee. During purchase negotiations conducted via Facebook private messages, RONDEAU wrote, "there no CITES [SIC] I can ship it just like that." RONDEAU also stated, "I'll mark it as a gift not a sale." Through an undercover PayPal account, I sent a total of $711.25 CAD [$584.11 USD] to PayPal account alex.soccor04@hotmail.com for the purchase the polar bear skull. The total payment sent included a $26.25 PayPal foreign currency exchange fee. PayPal records indicate that the PayPal account belongs to Alexis HORAN, a known associate of RONDEAU.

40.   On February 11, 2021, SA Bessey received a package (Tracking # LM004903981CA) from RONDEAU via Canada post, delivered by United States Postal Service (USPS), containing one (1) polar bear skull. The handwritten Canada Post label listed "1 Cadre" under the Itemized List of Contents section of the label. The declared value was $100. The box marked "Gift" was checked off.

## C.   Additional Package Intercepts

41.   On June 24, 2020, a set of three skulls, each mounted in individual picture frames, were posted for sale on THE OLD CAVERN BOUTIQUE Facebook page. A picture of the framed skulls was posted with instructions to "pm [private message] if interested." The post described the skulls as "bat bird mink" and the asking price was $80.

42.     On July 1, 2020, a USFWS Wildlife Inspector intercepted a Canada Post package (#LM004903522CA ) at the Champlain, New York POE. The sender was listed as "Vanessa R" at 823 St-Marc, Joliette, QC J6E6M1. The package was addressed to an individual in Fort Lauderdale, Florida. Inspection of the package revealed three animal skulls, each mounted on separate picture frames. The skulls consisted of a bird skull, a weasel skull, and a bat skull. The handwritten package label, signed by RONDEAU, declared the contents as "3 cadres." The box marked "Gift" was also checked off on the label. The Wildlife Inspector fully documented the package and its contents and returned it into the mail stream. The framed skulls documented during the inspection match those that were offered for sale on Facebook on June 24, 2020. A copy of the advertisement is included below:





43.     On July 10, 2020, a USFWS Wildlife Inspector intercepted a Canada Post package (#CX574421619CA) at the Champlain, New York POE. The sender was listed as "Vanessa R" at 823 St-Marc, Joliette, QC J6E6M1. The package was addressed to an individual in Springfield, Massachusetts. Inspection of the package revealed a Hartmann's zebra skin. The handwritten label, signed by RONDEAU, declared the contents as "TAPIS."[2] The box marked "Gift" was also checked off on the label. The Wildlife Inspector fully documented the package contents and returned it into the mail stream.

44.     A query of a USFWS wildlife declaration database revealed that RONDEAU has not filed any wildlife declarations as of January 21, 2021.

45.     Like the United States, Canada is also a signatory to CITES and Canadian law has been enacted to implement CITES. The Wild Animal and Plant Protection and Regulation of International and Interprovincial Trade Act (WAPPRITA) is Canada's

---

[2] "Tapis" is the French word for carpet.

national law that implements the CITES requirements. Under WAPPRITA, Article 6(2), no person shall, except under and in accordance with a permit, export from Canada any animal, or any part or derivative of an animal. In addition, under Article 8(b), no person shall knowingly possess an animal, or and part or derivative of an animal for the purpose of exporting it from Canada in contravention of WAPPRITA.

46.     A Wildlife Officer with Environment and Climate Change Canada has advised me that RONDEAU was never issued any export CITES permits that would allow for the legal export of a polar bear skull or Hartmann's mountain zebra skin.

### D.     Review of PayPal Records Reflecting United States Transactions

47.     A review of PayPal records linked to RONDEAU shows she received approximately $147,129.27 Canadian dollars (CAD) [$111,806.47 USD], $28,414.81 USD, and €218 European dollars (EUR) [$257.65 USD] in payments over the course of approximately 882 PayPal transactions. Of these transactions, approximately 248 payments were from United States based PayPal accounts. Of the United States based payments, $47,416.19 were in CAD [$36,032.51 USD] and $23,953.09 were in USD. Of these United States payments, approximately 51 transactions, totaling $2,382.09 USD and $4,472.83 CAD [$3,398.99 USD] included memo information identifying the payments were for wildlife, wildlife parts, or products thereof.[3]

---

[3] Not all transactions include memo or note information that allowed for identification of wildlife items. Likely, more United States transactions involved wildlife items but cannot be identified as such from PayPal records alone.

### E.     Attempted Outbound Smuggling and Apprehension

48.     On May 15, 2021, according to border crossing records, RONDEAU entered the United States at Fort Lauderdale–Hollywood International Airport in Fort Lauderdale, Florida from Montréal-Pierre Elliott Trudeau International Airport in Montreal, Quebec.


49.     On May 26, 2021, RONDEAU attempted to enter Canada at the Highgate Springs, Vermont / Phillipsburg, Quebec land border crossing. Canadian customs officials refused RONDEAU's entry into Canada because she was unable to show that she had a recent negative Covid-19 test. Upon re-entry into the United States at Highgate Springs, VT, U.S. Customs and Border Protection found RONDEAU to be in possession of numerous undeclared wildlife items, specifically:

- Eighteen (18) Crocodilian skulls and heads and seven (7) crocodilian feet. (All crocodilian species are protected under CITES Appendix II and "Threatened" under ESA, at a minimum.)
- One (1) Three-toed sloth (Most species of three-toed sloths are protected under either CITES Appendix I or Appendix II. Some species of sloth are listed as "Threatened" or "Endangered" under ESA.
- Twelve (12) horseshoe crabs
- Thirty (30) sea stars
- Twenty-three (23) raccoon feet
- Eight (8) African antelope horns
- One (1) Human skull with mounted butterflies
- Four (4) puffer fish
- Six (6) shark jaws

IV.    **CONCLUSION**

50.    Based on the foregoing, I respectfully submit that I have probable cause to believe that **VANESSA RONDEAU** has violated Title 16, United States Code, Sections 3372(a)(1), 3372(d)(2), 3373(d)(1)(B), and 3373(d)(3)(A)(ii); and Title 18, United States Code, Section 545.

Ryan Bessey, Special Agent
U.S. Fish and Wildlife Service

Sworn and subscribed telephonically
this  26th day of May 2021.

HON. MICHAEL J. ROEMER
United States Magistrate Judge